Matter of Calin-Horvath v Horvath (2019 NY Slip Op 08404)





Matter of Calin-Horvath v Horvath


2019 NY Slip Op 08404


Decided on November 20, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 20, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOSEPH J. MALTESE
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2018-10615
 (Docket No. O-5275-18)

[*1]In the Matter of Alexandra Calin-Horvath, respondent,
v
Robert Horvath, appellant.


Lewis S. Calderon, Jamaica, NY, for appellant.
Donna Dougherty, Rego Park, NY (Robert J. Seewald of counsel), for respondent.



DECISION & ORDER
In a proceeding pursuant to Family Court Act article 8, the petitioner's stepson appeals from an order of protection of the Family Court, Queens County (Mildred T. Negron, J.), dated August 9, 2018. The order of protection, upon a finding that the petitioner's stepson committed the family offenses of disorderly conduct, menacing in the third degree, and harassment in the second degree, made after a fact-finding hearing, inter alia, directed the petitioner's stepson to stay away from the petitioner until and including August 9, 2020.
ORDERED that the order of protection is affirmed, without costs or disbursements.
In March 2018, the then 72-year-old petitioner filed a family offense petition alleging that the appellant, her stepson, committed several family offenses against her, including disorderly conduct, menacing in the third degree, and harassment in the second degree. At the fact-finding hearing, the petitioner testified that her husband, the appellant's father, died on February 14, 2018, that she lived alone, and that she had several medical conditions and a congenital malformation in her hands which rendered her disabled and unable to care for herself. She further testified that on December 24, 2017, the appellant called her to tell her to pack her bags and to return to Romania and that he threatened to break her hands and legs if she did not. In addition, she testified that on March 8, 2018, the appellant came to her apartment, pounded on her door, yelled for about half an hour, and again threatened to break her hands and legs and also to "put" her in jail. She further testified that she did not open the door because she was afraid the appellant would beat her. According to the petitioner, the appellant was a violent person and he had been violent with his father prior to his father's death.
The appellant testified that, on December 24, 2017, he went to his father's home and spoke to a doctor for about two hours because he was told his father might be put in a nursing home and he was concerned since his father had a "big" pension of about $5,000 per month and the nursing home cost $9,000 per month. He further testified that the petitioner was "out of the discussion" and he never threatened her. The appellant further testified that, on March 8, 2018, after learning from his dentist that his father had died, he and his wife went to see the petitioner to learn the details of his father's death and to find out if his father had a will. According to the appellant, he stood six steps away from the petitioner's apartment door, while his wife knocked on the door, and he and his wife were outside the petitioner's apartment for only two or three minutes. He denied making any threats, but admitted that while there, he told his wife that he was going to report to the social [*2]services office or the housing office that the petitioner was committing a fraud. The appellant's wife also testified. Her testimony about the two events supported the appellant's version.
At the conclusion of the hearing, the Family Court found that the appellant committed the family offenses of disorderly conduct, menacing in the third degree, and harassment in the second degree. The court found the petitioner's testimony credible and did not find the testimony of the appellant and his wife to be credible.
A finding that a family offense was committed must be supported by a fair preponderance of the evidence (see Family Ct Act § 832; Matter of McGregor v Ferguson, 167 AD3d 897, 897). "The determination of whether a family offense was committed is a factual issue to be resolved by the Family Court'" (Matter of McGregor v Ferguson, 167 AD3d at 897, quoting Matter of Richardson v Richardson, 80 AD3d 32, 43; see Matter of Estime v Civil, 168 AD3d 936, 937).
Here, according due deference to the credibility determinations of the Family Court, a fair preponderance of the evidence adduced at the fact-finding hearing supported a finding that the appellant committed the family offenses of disorderly conduct, menacing in the third degree as to the March 2018 incident, and harassment in the second degree (see Penal Law §§ 120.15, 240.20, 240.26; Matter of Washington v Washington, 158 AD3d 717, 718; Matter of Zhuo Hong Zheng v Hsin Cheng, 144 AD3d 1166, 1167; Yvette H. v Michael G., 270 AD2d 123). Thus, the issuance of an order of protection against the appellant was warranted.
DILLON, J.P., MALTESE, DUFFY and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court